Carlor Company, Inc. * v. Commissioner. Carlor Co. v. Commissioner
Docket Nos. 30132, 30115, 30133, 30134.
United States Tax Court
1952 Tax Ct. Memo LEXIS 359; 11 T.C.M. (CCH) 1; T.C.M. (RIA) 52003; January 2, 1952
*359 J. O. Kramer, Esq., and George A. Donahue, Esq., for the petitioners. Newman A. Townsend, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $19,804.90 in income tax of the petitioner Carlor Company, Inc. (hereinafter referred to as Carlor Company), (Docket No. 30132) for the calendar year 1944, and by separate notices has advised Bertha M. McGarrigle (Docket No. 30115), Oscar Daniels Co. (Docket No. 30133), and the Estate of Oscar Daniels, Deceased, David Gordon Daniels and Otho S. Bowling, Executors (Docket No. 30134) of their liability as transferees of the assets of the Carlor Company. The deficiency results from the respondent's determination that the petitioner Carlor Company realized a capital gain of $79,219.59, rather than a net loss of $63,330.03, as reported on the sale of real estate known as Virginia Key. The respondent determined that the basis of the property to the petitioner Carlor Company was $165,311.45 instead of $318,348.03 as reported. The petitioners against whom transferee liability was asserted and the respondent have stipulated that they are liable as transferees *360 for the payment of any deficiency in income tax due by the petitioner Carlor Company for the calendar year 1944 to the extent of the cash distributions received by each in the liquidation of petitioner Carlor Company as stipulated and set forth in our findings of fact. The cases have been consolidated for hearing and opinion. Findings of Fact The petitioner Carlor Company is a Florida corporation organized on March 13, 1930. Its income tax return for the calendar year 1944 was filed with the Collector of Internal Revenue for the Fifth District of New Jersey. The petitioner Oscar Daniels Co. is an Illinois corporation. The petitioners David Gordon Daniels and Otho S. Bowling are coexecutors of the Estate of Oscar Daniels, deceased. The petitioner Bertha M. McGarrigle is an individual residing at South Newfane, Vermont. The petitioner Carlor Company reported a loss of $63,330.03 from the disposition of certain real estate known as Virginia Key on its income tax return for the calendar year 1944 as follows: Gross sales price
$255,018.00
Cost or other basis
318,348.03
Loss
$ 63,330.03 In the notice of deficiency and notices of transferee liability, the respondent *361 determined that the petitioner Carlor Company realized a gain of $79,219.59 in 1944 upon this disposition rather than a loss of $63,330.03. The gain determined by respondent was computed as follows: Gross sales price
$255,018.00
Less: expenses
10,486.96
Net sales price
$244,531.04
Cost or other basis
$140,400.00
Carrying charges
24,911.45
Cost or other basis as adjusted
165,311.45
Gain
$ 79,219.59
Virginia Key is an undeveloped island located in Dade County, Florida, between Biscayne Bay and the Atlantic Ocean, two and one-half miles southeast of the City of Miami. The ocean side of the Key consists of a relatively high sand ridge. To the west away from the ocean the Key tapers into lakes, canals and submerged land. In 1925, Virginia Key was owned by the Miami Real Estate Corporation, a company controlled by Fred H. Rand, Jr. On January 22, 1925, this company issued a series of bonds secured by a mortgage on Virginia Key in the amount of $350,000. The bonds were acquired in 1925 by Oscar Daniels Co., Oscar Daniels and Bertha Daniels, his wife, for a consideration of $306,939.78. During the year 1929 while the bonds were in default, a *362 mortgage foreclosure was commenced by the trustee of the bond issue against the Virginia Key Company, another corporation controlled by Fred H. Rand, Jr., which had acquired title to Virginia Key in 1927. The foreclosure suit was terminated in a settlement between the Virginia Key Company and the bondholders. Pursuant to the terms of the settlement made on or about March 16, 1930, the mortgagor, Virginia Key Company, conveyed Virginia Key to the petitioner Carlor Company, which corporation was organized by Oscar Daniels and his wife individually and as the stockholders of Oscar Daniels Co., to take title to the Key. On March 16, 1930, pursuant to the settlement agreement, 196.43 acres, or all but 3.54 acres in the northern section of the Key were conveyed by Carlor Company to the Virginia Beach Company, another corporation controlled by Fred H. Rand, Jr., and the Carlor Company received from the Virginia Beach Company $50,000 in cash and bonds with a face value of $250,000 secured by a mortgage on 138.58 acres in the northern section of the Key. (These 138.58 acres will hereinafter be referred to as the northern portion of the Key.) In addition, the Virginia Beach Company agreed *363 to improve the property conveyed to it by filling it to an elevation of 3 1/2 feet above mean low tide level. Additional mortgage bonds in the amount of $175,000 were to be sold to finance the cost of the improvements. The Carlor Company retained title to the southern section of the Key which contained approximately 223 acres and on April 28, 1930, gave the Hawthorne Company, Inc., another corporation controlled by Fred H. Rand, Jr., an option to purchase the property. The option was contingent upon the consummation of the mortgage executed by the Virginia Beach Company and the sale of the mortgage bonds in the amount of $425,000. The purchase price under the option was $250,000 if the option was exercised within one year of the date of the execution of the mortgage and the issuance of the bonds and $300,000 if exercised within two years thereof. The conveyances, mortgage and option agreement were all part of one transaction in the settlement of the foreclosure action. The Virginia Beach Company did not perform its covenant to improve the northern section of the Key. The mortgage bonds in the amount of $175,000 issued for that purpose were never sold and the option for the purchase *364 of the southern section was never exercised. In 1935, the Carlor Company, through the mortgage trustee, foreclosed mortgage bonds in the amount of $250,000 on the northern portion of the Key then belonging to the Virginia Beach Company. On the foreclosure sale, the northern portion of the Key was bid in by the mortgagor, Carlor Company, for $100,000. The Carlor Company paid $14,986.05 in cash and surrendered mortgage bonds which it sought to have foreclosed in the amount of $85,013.95 in payment of the $100,000 bid at the foreclosure sale. During the years 1930 to 1944, Carlor Company expended for carrying charges on the southern section and northern portion of the Key the sum of $24,911.45, which included foreclosure costs in the amount of $14,986.05 incurred in the foreclosure of the northern portion in 1935. Except for erosion, the physical condition of the Key was substantially the same in 1935 as in 1930. There was no substantial difference between the northern and southern sections of the Key. The Key was not connected to the mainland or to any islands in 1930 or 1935. No ferry service to the Key had been established at either date. There were no utilities on the Key *365 either in 1930 or 1935. In 1944, a jury awarded the Carlor Company $255,018 upon condemnation of Virginia Key in 1943 by the City of Miami. There were deducted from this gross award unpaid taxes, fees, and other expenses totaling $34,174.89, thus leaving $220,843.11 as the net amount realized by Carlor Company upon condemnation of the property. This net amount was received by Carlor Company in 1944. The Carlor Company was liquidated in 1944 and 1945. In the liquidation, cash distributions were made to its stockholders as follows: Amount
of Cash
Name of
Distribution
Stockholder
Received
Bertha M. McGarrigle
$ 16,796.47
Estate of Oscar Daniels, Deceased
11,197.64
Oscar Daniels Co., Inc.
167,964.16
The fair market value of the southern section of the Key in 1930, plus the fair market value of the acreage in the northern section of the Key referred to herein as the northern portion of the Key in 1935, was equal to at least $195,931.66. Opinion ARUNDELL, Judge: The sole question before us is the value of the southern section and northern portion of Virginia Key during the years 1930 and 1935, respectively. The basis of the property to the Carlor *366 Company is the total of the fair market value of the section and portion when they were acquired in 1930 and 1935, respectively. The petitioners reported a basis of $318,348.03 and a gross sales price of $255,018, resulting in a loss of $63,330.03. The respondent has determined that the basis was $140,400 adjusted to $165,311.45 because of carrying charges totaling $24,911.45. The respondent in his determination found that the net sales price was $244,531.04 after reducing the gross sales price by $10,486.96 for certain expenses incurred in the disposition of the property. The parties have now stipulated that the taxes and expenses incurred in the sale totaled $34,174.89 rather than $10,486.96 and that the net sales price was $220,843.11. We need only determine whether the values of the southern section and northern portion of the Key equalled at least $195,931.66 since this value or basis, plus the $24,911.45 in carrying charges, totals $220,843.11, the net amount realized by the petitioner Carlor Company upon disposition of the Key in 1944, and would thus result in no gain having been realized. The petitioners do not seek the benefits of the carry-back and carry-over provisions *367 and they have stated that it was immaterial to them whether the basis was higher than $195,931.66. At the hearing, counsel for the respondent stated that $100,000 of the total of $140,400 determined in the notice of deficiency as the basis of the property was the value placed by the respondent on the northern portion of the Key. In reaching this valuation, the respondent followed his Regulations 111, section 29.23 (k)-3, which provide that the fair market value of mortgaged property bid in by the taxpayer shall be presumed to be the amount for which it is bid in "in the absence of clear and convincing proof to the contrary". On brief and without amendment of the pleadings he now urges a much lower value for the northern portion, basing his contention on certain expert testimony. We are not persuaded that the value on this portion of the Key should be changed. We think the best evidence of the value of the southern section in 1930 is the price at which the 196.43 acres in the northern section were sold in that year. The northern section was substantially similar to the southern section except that it contained less acreage. The 196.43 acres in the northern section were sold for *368 $50,000 in cash, plus bonds with a face value of $250,000 secured by a mortgage on the property sold. At the same time, another corporation controlled by the same individual who controlled the corporation making this purchase was given an option to purchase the southern section consisting of approximately 223 acres for $250,000 or $300,000, depending upon the year of purchase. After evaluating all the evidence, including the testimony of experts for both the petitioners and the respondent, we are of the view that the fair market value of the southern section, plus the fair market value of the northern portion of the Key in the respective years 1930 and 1935 in which they were acquired by Carlor Company, was equal to at least $195,931.66. Accordingly, the basis of this property to the petitioner Carlor Company, Inc., was at least $195,931.66 which, when adjusted because of the carrying charges in the amount of $24,911.45, results in no gain having been realized upon the disposition of the property in 1944 for the net amount of $220,843.11. Decisions will be entered for the petitioners. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Bertha M. McGarrigle, Transferee; Oscar Daniels Co. (of Illinois), Transferee, and Estate of Oscar Daniels, Deceased, David Gordon Daniels and Otho S. Bowling, Executors, alleged Transferees.↩